UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD BEAN and LYNETTE HILDER, | ) ) ) |
| Plaintiffs, | ) ) 1:11-cv-00376-SEB-DKL ) |
| vs. | ) ) |
| INDIANA UNIVERSITY, Acting through its Police Department, GARTH VAN LEEUWEN, the CITY OF BLOOMINGTON, Acting by and through its Police Department, and OFFICER ZAHASKY, Defendants. | ) ) ) ) ) ) ) ) |

**ORDER GRANTING UNIVERSITY DEFENDANTS' MOTION TO DISMISS**

This cause is before the Court on the Motion to Dismiss Plaintiffs' Amended Complaint [Docket No. 25], filed on June 16, 2011 by Defendants Garth Van Leeuwen and Indiana University ("University Defendants"[1]), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Richard Bean and Lynette Hilder ("Plaintiffs") have filed suit pursuant to 42 U.S.C. § 1983 to redress University Defendants' alleged infringements of Ms. Hilder's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Additionally, Plaintiffs have asserted several state tort claims against University Defendants based on the principle of *respondeat superior* for Officer

---

[1] Although Plaintiffs have named Officer Zahasky in their Amended Complaint, this Motion to Dismiss solely addresses Officer Van Leeuwen's alleged acts. Thus, we do not discuss whether, as asserted in the Amended Complaint, Officer Zahasky's alleged acts constitute false arrest and/or excessive force. *See* Am. Compl. ¶ 31.

Van Leeuwen's alleged violations of Indiana law. For the reasons detailed in this entry, we GRANT WITH PREJUDICE University Defendants' Motion to Dismiss Plaintiffs' claims against Officer Van Leeuwen under 42 U.S.C. § 1983, and we GRANT WITHOUT PREJUDICE University Defendants' Motion to Dismiss Plaintiffs' state law claims.

**Factual Background**

Lynette Hilder visited Bloomington, Indiana on October 4, 2009 with her husband, Richard Bean, and their sons, Ben and Myles Bean, to attend Indiana University alumni events and to visit Ben, who is currently enrolled as an undergraduate student at Indiana University. Am. Compl. ¶ 12. Kirkwood Avenue is a street contiguous to the campus whose many shops and eating/drinking establishments attract a regular flow of people and activities. As the family walked along Kirkwood Avenue that evening, several fights erupted in their vicinity, which disturbances soon brought police officers to the scene. *Id.* ¶ 13. Officer Garth Van Leeuwen of the Indiana University Police Department was one such officer who responded in an apparent attempt to restore order that night, running "at an extremely high rate of speed" along the sidewalk in pursuit of a suspect from one of the fights, and in the process, pushing past Ben and Myles. *Id.* ¶ 14. Ms. Hilder, meanwhile, was walking at a leisurely pace in front of her sons, unaware of Officer Van Leeuwen's presence. *Id.* ¶ 15.

As Officer Van Leeuwen passed Ben and Myles and approached Ms. Hilder, he "bent down in a blocking position" and continued running, eventually colliding with Ms.

Hilder and causing her to fall to the ground "in the path of oncoming traffic" on Kirkwood Avenue. *Id.* ¶ 16. Despite this collision with Ms. Hilder, Officer Van Leeuwen did not stop running to determine if she was injured, but continued running toward the suspect. *Id.* ¶¶ 16, 18-19. Ms. Hilder suffered fractures of several bones in her shoulder, causing her to undergo several surgeries to repair those injuries. *Id.* ¶ 17. At this point, she requires further surgery to remove bone fragments from her shoulder and alleges that she might never regain full range of motion in the affected arm and joint. *Id.* ¶ 28.

On March 17, 2011, Plaintiffs filed their Complaint asserting § 1983 claims relating in part to a violation of Ms. Hilder's Fourteenth Amendment due process right to bodily integrity.[2] In addition, they seek relief based on the following Indiana state law claims: false arrest, malicious prosecution, negligence, and intentional infliction of emotional distress. Plaintiffs were granted leave to amend their Complaint on June 2, 2011. The Amended Complaint [Docket No. 24] contains two additional claims by Ms. Hilder: (1) that Officer Van Leeuwen unreasonably seized Ms. Hilder in contravention of the Fourth Amendment, and (2) that University Defendants are also liable under Indiana law for battery of Ms. Hilder. Am. Compl. ¶¶ 30, 32-33.

## **Legal Analysis**

---

[2]Mr. Bean's claim for relief is based on Fourth Amendment violations when he was subjected to excessive force and false arrest by Officer Zahasky. Am. Compl. ¶ 31. The Motion to Dismiss does not address these causes of action.

## I. Standard of Review

Rule 12(b)(6) requires dismissal if the plaintiff's complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Heyde v. Pittenger*, 633 F.3d 512, 516-17 (7th Cir. 2011). The standard for assessing the procedural sufficiency of pleadings is imposed by Rule 8, Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, although the complaint need not recite "detailed factual allegations," it must state enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible when the plaintiff pleads facts sufficient for the court to infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The *Twombly/Iqbal* standard "is not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). By comparison, a complaint that merely contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy the factual plausibility standard. *Twombly*, 550 U.S. at 555.

A party seeking dismissal under Rule 12(b)(6)'s requirement that the complaint state a claim upon which relief can be granted bears a heavy burden. In making this determination, the court views the complaint in the light most favorable to the non-movant, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences from those allegations in favor of the non-movant. *Lee v. City of Chi.*, 330

4

F.3d 456, 459 (7th Cir. 2003).  The plaintiff "receives the benefit of imagination" at this stage "[as] long as the hypotheses are consistent with the complaint."  *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).  Thus, a complaint should only be dismissed pursuant to Rule 12(b)(6) when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

To state a claim for which relief can be granted under § 1983, Plaintiffs' Amended Complaint must allege that Officer Van Leeuwen, while acting under color of state law, caused Ms. Hilder to suffer a constitutional injury.  42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights; rather, it "provides the means by which rights conferred elsewhere may be enforced."  *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003).  Thus, "an initial task for a court faced with a suit under 42 U.S.C. § 1983 claiming that government agents have used excessive force is to 'identify [ ] the specific constitutional right allegedly infringed by the challenged application of force.'"  *Schaefer v. Goch*, 153 F.3d 793, 796 (7th Cir. 1998) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).  Here, Ms. Hilder asserts two constitutional claims:  (1) a Fourteenth Amendment substantive due process claim, and (2) a Fourth Amendment unreasonable seizure claim.  We analyze each of these claims below.

## II.  Fourteenth Amendment Claim

Pursuant to the Due Process Clause of the Fourteenth Amendment, the government cannot "deprive any person of life, liberty or property, without due process of law."  U.S.

CONST. AMEND. XIV.  Plaintiffs' first claim asserts that Officer Van Leeuwen battered Ms. Hilder so severely as to constitute a violation of a constitutionally protected liberty interest in her personal bodily integrity within the meaning of the Fourteenth Amendment. *See Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977) ("While the contours of this historic liberty interest in the context of our federal system . . . have not been defined precisely, they have always been thought to encompass freedom from bodily restraint."); *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997) (recognizing bodily integrity as a liberty right within substantive due process clause); *Twyman v. Burton*, 757 F. Supp. 2d 804, 809 (S.D. Ind. 2010) (same).

     Battery committed under color of state law is actionable under 42 U.S.C. § 1983.  *See Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003).  However, although most offensive touching can constitute a battery, only "a serious, as distinct from a nominal or trivial, battery" will rise to the level of a constitutional violation.  *Id.*  To determine the severity of the battery, the court must assess the level of culpability of the government official, a determination to which the Seventh Circuit has applied two levels of review: the "deliberate indifference" standard and the "shocks the conscience" standard.  *See Schaefer*, 153 F.3d at 797; *Jordan v. City of Indianapolis*, No. IP 01-1391-C H/K, 2002 WL 32067277, at *8 (S.D. Ind. Dec. 19, 2002) (citations omitted).  The deliberate indifference standard is appropriate in cases where the official has the "opportunity for forethought," whereas the "shocks the conscience" standard is employed in cases where

the official "[was] forced to 'make decisions in haste, under pressure, and . . . without the luxury of a second chance.'" *Schaefer*, 153 F.3d at 797-98 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1988)).

In support of their Motion to Dismiss, University Defendants direct the Court's attention to several cases within the Seventh Circuit indicating the severity of misconduct Plaintiffs' factual allegations must demonstrate to be actionable under § 1983. They contend that although Officer Van Leeuwen's conduct toward Ms. Hilder may have been excessive under the circumstances and thus inexcusable or even shameful, it did not "shock the conscience" and hence fails to satisfy the appropriate constitutional standard for a grant of relief.[3] University Defendants refer specifically to *Jordan v. City of Indianapolis* and posit that the facts and holding of *Jordan* are instructive with respect to the instant matter. In *Jordan*, police officers shoved the female plaintiff into the side of a staircase while they were running up the stairs of her home in pursuit of her uncooperative, suicidal husband located on the second floor. *Jordan*, 2002 WL 32067277, at *10. Ms. Jordan hit the railing of the staircase and injured her back. Applying the "shocks the conscience" standard, the trial court granted the defendants' motion for summary judgment because there was "no evidence that the officers acted with the purpose of harming her," and it was clearly a situation requiring the officers to make

---

[3]We agree that the applicable standard for the instant set of facts is the "shocks the conscience" standard. If deliberate indifference is not the appropriate standard for a prisoner's § 1983 claim arising out of a violent riot, it is similarly inapposite here. *Lewis*, 523 U.S. at 852.

"quick decisions" without time to reflect. *Id.*

Plaintiffs argue that *Jordan* and other cases relied upon by University Defendants are distinguishable from their case because the injuries sustained by plaintiffs in the cited cases were less serious than Ms. Hilder's broken shoulder, which has required multiple surgeries and possibly permanent physical damage. Pls.' Br. at 3-5. This rationale is both incomplete and erroneous as it centers on the severity of a particular plaintiff's injury rather than the behavior of the government official. Instead, the proper inquiry is whether the officer's conduct "shocks the conscience." *Schaefer*, 153 F.3d at 797 (citing *Lewis*, 523 U.S. at 846). To determine whether his conduct satisfies that standard, we must examine the entire context of Officer Van Leeuwen's behavior. In that regard, we acknowledge that on the night in question his response to the Kirkwood Avenue fights no doubt required him to make spur-of-the-moment decisions, guided by his training, his perceptions and instinct, and previous experience. In such circumstances, the luxury of time to make the "best" decision is not usually available.

On October 4, 2009, Officer Van Leeuwen was confronted with conflicting obligations in his efforts to "quell . . . disturbances" triggered by the reports of several fights. Am. Compl. ¶ 13. The Supreme Court aptly described this conflict in duties in *Lewis*, as follows:

> [T]he police on an occasion calling for fast action have obligations that tend to tug against each other. Their duty is to restore and maintain lawful order, while not exacerbating disorder more than necessary to do their jobs. They are supposed to act decisively and to show restraint at the same moment.

*Lewis*, 523 U.S. at 853. Bearing in mind the obvious strain such situations place on an officer's decision-making capabilities, and expressly noting that "[t]he analogy to sudden police chases (under the Due Process Clause) would be hard to avoid," the Court in *Lewis* opined that an officer's recklessness does not satisfy the "shocks the conscience" standard. *Id.* The Court ruled that a harmful purpose is necessary to "spark the shock that implicates 'the large concerns of the governors and the governed.'" *Id.* (citation omitted).

In applying the *Lewis* analysis, we must determine whether Officer Van Leeuwen applied force in a good faith effort to restore order or "maliciously and sadistically for the very purpose of causing harm." *Id.* (citation omitted). Based on the evidence before us, we cannot conclude that, on the evening in question, it was Officer Van Leeuwen's purpose to harm Ms. Hilder, let alone anyone else he may have encountered en route to apprehending the suspect.

Surprisingly, Plaintiffs' brief omits entirely any discussion of the "shocks the conscience" standard and instead relies on two cases that are clearly inapposite to the instant matter. Both cases involve government officials whose unseemly conduct could *not* be explained away by the pressure of "unforeseen and rapidly changing circumstances." *See Schaefer*, 153 F.3d at 798. In *Alexander v. DeAngelo*, the court found a charge of battery actionable under § 1983 when police officers coerced the plaintiff to perform oral sex during a sting operation against Officer Alexander. *Alexander*, 329 F.3d at 916. The officers leading the sting operation threatened the

9

plaintiff with forty years in prison for cocaine possession if she would not "cooperate" by performing oral sex on the officer they hoped to catch in the sting. *Id.* at 917. The Seventh Circuit held in that case that "[s]ex procured by threats that the threatener has no legal right to make is a common form of rape," and that "[r]ape . . . is not only a battery, but a very serious battery," thus entitling the plaintiff to bring her claim under § 1983 for the deprivation of her bodily integrity. *Id.* at 916 (citations omitted).

Plaintiffs also attempt to rely on *Wudtke v. Davel*, 128 F.3d at 1063, a case in which the court found that the plaintiff had stated a claim for relief when she alleged that the superintendent of the school district where she was employed touched her breasts and forced her to perform oral sex on him. Because the superintendent threatened not to renew the plaintiff's teaching license if she refused to engage in sexual acts with him, the court deemed his behavior "the kind of serious physical assault" by "explicit invocation of his state-granted powers" sufficient to raise a substantive due process claim. *Id.* at 1063-64. Thus, both *Alexander* and *Wudtke* concerned sexual assaults resulting from threats of government officials who, acting under color of state law, used their positions of power to effect a battery. In no sense did they involve any spur-of-the-moment decisions by police officers in the line of duty. Accordingly, these cases are clearly inapposite to the case before us.

The facts as alleged here neither demonstrate directly nor support an inference that Officer Van Leeuwen acted with malicious or sadistic intent to harm Ms. Hilder; he simply—though regrettably—knocked her down, albeit forcefully, while pursuing a

10

fleeing suspect. From these facts, the Court is unable to infer, as Plaintiffs invite us to do, that Officer Van Leeuwen "must" have formed a conscious intent to harm Ms. Hilder. The only fact that might arguably give rise to such an inference is that, in what was clearly a hectic and highly charged moment, Officer Van Leeuwen assumed a "blocking position" as he approached Ms. Hilder in the course of his sprint to catch an individual who reportedly posed a threat to persons on Kirkwood Avenue. From these facts, the Court is not equipped to infer a culpable intent on the part of Officer Van Leeuwen. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)). Here, the well-pleaded facts reveal only that Officer Van Leeuwen saw Ms. Hilder in front of him, ran into her while giving chase to a suspect, and continued sprinting in an effort to apprehend the suspect who was trying to evade him. We find it neither reasonable nor justified to infer more than a possibility of police misconduct from these facts; further, we decline to conduct a searching inquiry into Officer Van Leeuwen's subjective intent. Plaintiffs cite to not a single case—and indeed, our research turned up nothing as well—where the court inferred an actionable level of intent in the context of an innocent bystander injured during a police chase. Therefore, we GRANT University Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment claim.

**III.  Fourth Amendment Claim**

We turn next to Plaintiffs' allegations that Ms. Hilder was "seized" within the meaning of the Fourth Amendment when Officer Van Leeuwen intentionally applied force to her person. The Fourth Amendment prohibits the governmental seizure of a person unless that seizure is reasonable. *See* U.S. CONST. AMEND. IV. As noted above, on the evening of the incident, Officer Van Leeuwen was pursuing a suspect who had fled from a bar fight when the officer encountered Ms. Hilder. Plaintiffs recite the facts underlying the claim as follows: "Seeing Lynette Hilder in his path, the officer bent down in a blocking position and continued to run forward, knocking Hilder . . . into [sic] Kirkwood Avenue." Am. Compl. ¶ 16. Plaintiffs urge the Court to infer from the pleadings that Officer Van Leeuwen specifically intended to stop Ms. Hilder from walking when he collided with her, thereby satisfying the legal definition of "seizure" in *Lewis*, to wit: "governmental termination of freedom of movement *through means intentionally applied*." *Lewis*, 523 U.S. at 844. The facts alleged do not support such a finding or inference.

Under Seventh Circuit law, an accident *or tort* is distinguishable from an intentional detention that implicates constitutional freedoms. *See Bublitz*, 327 F.3d at 489. An innocent bystander, such as Ms. Hilder, is for the most part rarely a target of law enforcement officers seeking to halt fleeing suspects, and if such a person "[is] . . . not the intended subject of the defendant['s] attempts to seize the fleeing [suspect], . . . the Fourth Amendment is not implicated and cannot provide the basis for a § 1983 claim." *Id.*

12

(holding that officers' collision with a family's minivan, which killed the plaintiff's wife and child, was not a "seizure" as contemplated by the Fourth Amendment; it was "not a means intended by police to stop the family, but rather an unintended consequence of an attempt to seize [the fleeing suspect]."). Because Plaintiffs' allegations are insufficient to show that Ms. Hilder was "seized," she could not have been "unreasonably seized" within the meaning of the Fourth Amendment. Accordingly, we GRANT University Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim.

## IV. Qualified Immunity

University Defendants alternatively argue that even if the Court infers a deprivation of a constitutional right under the Fourth or Fourteenth Amendment, Officer Van Leeuwen is shielded from liability based on qualified immunity. Defs.' Reply at 6. The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009), the Seventh Circuit noted *Harlow*'s two key inquiries for qualified immunity assertions: (1) whether the facts demonstrate that the defendant violated a constitutional right of the plaintiff, and (2) whether that constitutional right was "clearly established" when the alleged violation took place. Having already determined that Plaintiffs have failed to carry their burden of pleading facts sufficient to state a claim actionable under either the Fourth or Fourteenth

Amendment, we answer the first inquiry in the negative. The facts do not demonstrate that University Defendants violated Ms. Hilder's constitutional rights; therefore, we need not proceed with the analysis. University Defendants are entitled to qualified immunity on Plaintiffs' federal claims.

## V.  Supplemental State Law Claims

Because Ms. Hilder's federal law claims are subject to dismissal, the only claims remaining on her behalf in the Amended Complaint are state law claims for false arrest, battery, malicious prosecution, negligence, and intentional infliction of emotional distress. The supplemental jurisdiction statute provides that a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims if:

> (1) the claim raises a novel or complex issue of [s]tate law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001). "[I]n the usual case in which all federal[ ] law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the state[ ] law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The "sensible presumption" is that if all federal claims are extinguished in a pre-trial stage of litigation, "the district court should relinquish jurisdiction over the

remaining state[ ] law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Here, because all of Plaintiffs' federal claims are subject to dismissal, it is proper for the Court to relinquish jurisdiction over the remaining state law claims.

We briefly address the parties' disagreement as to the import of the Indiana Supreme Court's holding in *Wilson v. Isaacs*, 929 N.E.2d 200 (Ind. 2010), with respect to the case at bar. Specifically, Plaintiffs assert that the developments in Indiana law from *Wilson* preclude University Defendants' claim of immunity for the state tort claims; University Defendants rejoins that *Wilson* applies only to arrestees. In our view, this case presents a novel issue under Indiana law, and the parties' contentions belong in state court. "How far state law exposes state and local agencies to liability is a delicate question that federal judges should hesitate to tackle." *Myers v. Cnty. of Lake*, 30 F.3d 847, 848-49 (7th Cir. 1994). Thus, we DISMISS Plaintiffs' state law claims without prejudice.

## Conclusion

For the reasons set forth in the foregoing entry, the Court now GRANTS WITH PREJUDICE University Defendants' Motion to Dismiss Plaintiff Hilder's claims under 42 U.S.C. § 1983 (Fourth and Fourteenth Amendment claims). Mr. Bean's Fourth Amendment claims of excessive force and false arrest remain since they were not addressed in the Motion to Dismiss. The Court also GRANTS WITHOUT PREJUDICE the Motion to Dismiss Plaintiff Hilder's state tort claims. Pursuant to 28 U.S.C. § 1367(d), Plaintiffs shall have at least 30 days to refile these claims in state court after the

filing date of this entry. Plaintiff's counsel is directed to inform the Court within the same 30-day period whether he wishes to proceed to litigate Mr. Bean's constitutional claims separately or have them also dismissed without prejudice so they can be added to the refiled state claims in state court, should he choose to proceed in that forum.

IT IS SO ORDERED.

Date: _____03/30/2012            _____      _____*signature*_____

                                                             SARAH EVANS BARKER, JUDGE
                                                             United States District Court
                                                             Southern District of Indiana

Copies to:

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

James R. A. Dawson
TAFT STETTINIUS & HOLLISTER LLP
jdawson@taftlaw.com

Abram B. Gregory
TAFT STETTINIUS & HOLLISTER LLP
agregory@taftlaw.com

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com